IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAMUEL RUIZ,

      Plaintiff,

vs.                       CASE NO. 1:16-cv-359-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).   ECF No. 1.  The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  ECF Nos. 11, 21, 22.  For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff's applications were filed on November 19, 2012, and alleged disability beginning September 28, 2012.  R. 16, 241-55, 267-68.  His claim was denied initially and upon reconsideration.  At Plaintiff's request, a

hearing was held before an Administrative Law Judge ("ALJ") on February 25, 2015, at which Plaintiff and a vocational expert (VE) testified.  R. 34-55. The ALJ issued an unfavorable decision on June 9, 2015; the Appeals Council denied review.  R. 1-8, 16-25.

This appeal followed.  Plaintiff raises one issue for review:  Whether substantial evidence supports the ALJ's finding that Plaintiff is capable of full-time work at the light exertional level, in view of his daily headaches and antalgic gait.  *See* ECF No. 21 at 30.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to last for a continuous period of not less than twelve months.[6]

The impairment must be severe, making Plaintiff unable to do his previous

work, or any other substantial gainful activity which exists in the national

economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]

First, if a claimant is working at a substantial gainful activity, he is not

disabled.[9]  Second, if a claimant does not have any impairment or

combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe

impairment and is not disabled.[10]  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2016 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

from doing past relevant work, he is not disabled.[12]   Fifth, if a claimant's

impairments (considering his residual functional capacity ("RFC"), age,

education, and past work) prevent him from doing other work that exists in

the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff.[14]   The burden then temporarily

shifts to the Commissioner to demonstrate that "other work" which the

claimant can perform currently exists in the national economy.[15]   The

Commissioner may satisfy this burden by pointing to the Medical-

Vocational Guidelines (the "Grids") for a conclusive determination that a

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

evidence.[20]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A. Findings of the ALJ

The ALJ determined that Plaintiff has the severe impairments of:

brain tumor, post-removal, with visual disturbance; and obesity.  The ALJ

found that Plaintiff's claimed degenerative disc disease (DDD) was non-

severe because there were no imaging studies confirming the impairment

and the medical evidence contained no diagnosis of DDD.  The ALJ

determined that Plaintiff's claimed adjustment disorder was non-severe.[21]

Plaintiff does not have an impairment or combination of impairments that

meets or equals the listings.  The ALJ determined that Plaintiff has the

RFC to perform light work, that he has a visual field defect in night vision,

and he is unable to speak in English.  The ALJ found that Plaintiff's

testimony regarding the intensity, persistence, and limiting effects of his

---

[20] *See id.*

[21] Because Plaintiff does not appeal the ALJ's determination regarding his
claimed mental impairments, they will not be discussed further.

impairments were not entirely credible, based on the ALJ's assessment of the evidence and medical opinions.  R. 18-23.

The ALJ found that Plaintiff is unable to perform his past relevant work as a truck driver, compound mixer, and forklift operator.  Relying on the testimony of a VE, the ALJ found that for a person with Plaintiff's age, education, work experience, and RFC, with visual limitations and inability to speak English, there are jobs that exist in substantial numbers in the national economy that Plaintiff could perform such as housekeeper cleaner, small products assembler, and carwash attendant.  The ALJ therefore found that Plaintiff was not disabled.  R. 23-25.

## B.  *Medical Evidence*

Plaintiff's argument on appeal focuses on asserted limitations stemming from his headache pain and antalgic gait.  ECF No. 21 at 30-34. The evidence that is relevant to Plaintiff's argument may be summarized as follows.

Plaintiff sought treatment for headaches and blurry vision beginning in September 2012.  Plaintiff was diagnosed with a parencephalic cyst, which put pressure on his brain and caused headaches and visual

disturbances.  He underwent surgical removal of the cyst, and by December 2012 his treatment records reflect that he had recovered well and had resumed normal activities.

In March 2013, Plaintiff's primary care provider, Dr. Regan Burke, completed a treating source questionnaire, noting that Plaintiff did not require an assistive device and had 4/5 upper and lower strength.

Dr. Rosen, Plaintiff's neurosurgeon, assessed Plaintiff as "doing well" post-surgery.  Dr. Rosen noted that Plaintiff's current MRI showed persistence of his cyst, as expected, but "no significant interval increase in size or local mass effect," or associated edema.  Given Plaintiff's complaints of headaches but the absence of any local mass effect, Dr. Rosen recommended that Plaintiff see a primary care physician or neurologist for his complaints.  Dr. Rosen recommended follow-up in one year for a repeat MRI of the brain.  Dr. Rosen had recommended that Plaintiff not work until he recovered from surgery and could not drive until he was off of pain medication, but as the ALJ noted, these were finite instructions related to Plaintiff's pre-surgical condition.  R. 364-407; 411-14.

In April 2013, Plaintiff underwent a consultative evaluation by Karen Marrero, M.D.  Dr. Marrero noted that Plaintiff presented with a claim of disability due to headaches.  Plaintiff was using a cane, which he said he used all of the time for balance.  Dr. Marrero noted that his gait was "slowly antalgic (with and without cane)."  Plaintiff's examination was otherwise essentially normal, with full range of motion, normal muscle tone, no joint deformity, negative straight leg raise test, intact coordination and dexterity, he was able to stand on heels/toes, and he had 5/5 motor strength.  Dr. Marrero's recommendation was to "optimize pain management as far as headaches."  With respect to ability to work, Dr. Marrero opined that Plaintiff could bend, stand, and walk one-third to two-thirds of the time with frequent breaks, and was otherwise able to sit, carry, handle objects, hear, speak, write, and travel (as a passenger) with regular breaks.  She assessed that Plaintiff should avoid working at unprotected heights, and could perform work-related mental activities with simple instructions.  R. 415-18.

Two consultative vision examinations confirmed that Plaintiff suffers from a bilateral visual field defect.  R.  424-28.

Plaintiff presented to the Central Florida Family Health Center (CFFHC) on April 4, 2013, for medication refills by Erica Kindig, ARNP. Plaintiff's history describes him as "a disable," but that appears to be history provided by Plaintiff.  R. 463. Plaintiff expressed that he was not currently experiencing pain and did not experience chronic pain.  However, he also described chronic headache that was controlled with Fioricet.  His physical examination was normal.  It was noted that he used a cane, but his musculoskeletal examination was normal.  R. 462-63.

Plaintiff presented to Dr. Anitha Vemulapalli, M.D., of the CFFHC for complaints of headache pain on April 17, 2013.  Plaintiff assessed the pain as 8/10 intensity, located on the left side of his head.  He also complained of imbalance/dizziness.  Plaintiff's physical examination was normal.  It was noted that he uses a cane.  Plaintiff was continued on pain medication for headaches and referred to neurology.  R. 454-58.

Plaintiff underwent a consultative mental examination on April 30, 2013, by Magaly Delgado, Psy.D.  Plaintiff's chief complaint was that his life had changed after his surgery.  He reported suffering from depression and stated that he was unable to ride a bicycle or walk around the park,

and had to walk very slowly.  He described daily headaches, but did not

feel head pain when lying down.  He experienced pain when moving

around.  He stated that medication was helpful but wore off quickly.  He

stated that he could perform self-care ADL's without assistance,

occasionally helped with dishes or laundry, and could not sweep or mop.

Plaintiff denied socializing with anyone or having any hobbies.  Dr. Delgado

diagnosed Plaintiff with adjustment disorder with depressed mood.  Plaintiff

would not need assistance managing benefits.  He had moderately

impaired social functioning and his functional ability was mildly to

moderately impaired.  R. 470-73.

Plaintiff was examined at Mid-Florida Urological Associates in May

2013, for symptoms of enlarged prostate.  Apart from that complaint, his

multi-system physical examination was normal, and it was noted that he

had "normal gait and station of head and neck."  R. 474-76.

In May 2013, Plaintiff was evaluated by a neurologist at Neurological

Consultants of Central Florida for his headaches.  He described

headaches occurring two to three times a week.  Plaintiff was treated with

Elavil as well as Fioricet.  At a follow up visit in July 2013, Plaintiff claimed

he was better and his headaches were under fairly good control.  Plaintiff

felt the Elavil was making him feel depressed, but he continued with

Fioricet.  R. 486-87.

Plaintiff was treated by a rheumatologist, Gopal Basisht, M.D., in

September and October 2013 for complaints of pain.  He was diagnosed

with rheumatoid arthritis and prescribed Clinoril, following which he stated

he felt 70% to 80% better.  R. 513-15.

### C.  *Hearing Testimony*

Plaintiff's hearing was conducted with the aid of an interpreter.  *See*

R. 34-55.  Plaintiff was 53 years old at the time of the hearing.  He attained

a high school diploma in Puerto Rico.  Plaintiff testified that he was unable

to work due to having a brain tumor on his optic nerve, which caused a

constant headache.  He testified that he has headaches every day, but the

intensity varies.  He also testified that he is disabled due to "everything in

his back."  Plaintiff's hearing representative stated that records document

degenerative disc disease would be provided.  As the ALJ noted in the

hearing decision, such records were never received.  R. 37-39.

Plaintiff testified that he has difficulty reading small print and cannot

read the newspaper without putting on his glasses.  He also suffers from

depression and anxiety, for which he takes medication.  R. 39-42.

Plaintiff testified that he awakes with pain in his body and a

headache, and takes his medication.  He can dress himself but does so

slowly.  On examination by counsel, Plaintiff testified that he had recently

fainted and was admitted to the hospital.  He was evaluated for heart

problems, but the result was negative.  He was advised to go to a

neurologist.  R. 42-43.

Plaintiff testified that he has more bad days than good days.  On a

bad day, he gets up and then goes back to bed with a headache.  R. 47.

The VE testified that Plaintiff's previous work had been performed at

the medium exertional level.  Given Plaintiff's age, education, work

experience, RFC for light work, visual field defect in his night vision, and

inability to speak English, the VE testified that there were jobs in the

national economy that Plaintiff could perform, such as housekeeping

cleaner, small products assembler, and car wash attendant.  R. 50-55.

## IV. DISCUSSION

Plaintiff argues that the "substantial evidence in this matter

establishes" that Plaintiff suffers from daily headaches, for which he is medicated, and that he "walks with an antalgic gait whether or not he is using his cane."  As support for his argument, Plaintiff points to Dr. Marrero's report describing Plaintiff's antalgic gait and Plaintiff's complaints of headache pain following his surgery.  Plaintiff argues that his complaints of headache pain appear to be "exactly the kind of situation for which the subjective pain standard was developed."  ECF No. 21 at 30.

Turning first to Plaintiff's claim that he suffers from an antalgic gait and therefore lacks the RFC for a full range of light work, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff had the RFC to perform a full range of light work during the relevant time period with no exertional limitations due to antalgic gait.  The ALJ thoroughly discussed the substantial objective medical evidence that supported his RFC determination. *See Dyer v. Barnhart*, 395 F.3d 1206, 12111 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable the district court or this Court to conclude that the ALJ considered her

medical condition as a whole.").  A lack of medical reports indicating exertional limitations suggests that a claimant's impairments may not be as limiting as alleged. *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (finding that substantial evidence supported the ALJ's conclusion that plaintiff's impairments were not severe because there were no reports indicating exertional limitations).

Plaintiff's argument relies on Dr. Marrero's statement that Plaintiff walked with an antalgic gait both with and without his cane.  With respect to Plaintiff's musculoskeletal condition, the ALJ noted that there was no evidence in the record documenting the existence of degenerative disc disease.  The ALJ further noted that while Plaintiff used a walker during the recovery period following his surgery, there was no medical evidence that supported the conclusion that Plaintiff's cane was medically necessary due to antalgic gait.  Although Dr. Marrero reported Plaintiff's use of the cane and described his antalgic gait, as discussed above her physical examination findings reflected that Plaintiff had full range of motion, normal muscle tone, no joint deformity, negative straight leg raise test, intact coordination and dexterity, he was able to stand on heels/toes, and he had

5/5 motor strength.  She opined that Plaintiff could bend, stand, and walk one-third to two-thirds of the time with frequent breaks, and was otherwise able to sit, carry, handle objects, hear, speak, write, and travel (as a passenger) with regular breaks.  She assessed that Plaintiff should avoid working at unprotected heights, and could perform work-related mental activities with simple instructions.  R. 415-18.  Dr. Burke affirmatively represented that Plaintiff did not require an assistive device, and the physical examinations by other providers summarized above were normal with respect to Plaintiff's musculoskeletal system and gait with no provider stating that Plaintiff required an assistive device.  R. 410-11, 454-58, 462-63, 474-76.

As the ALJ found, Dr. Marrero's objective findings, as well as the other objective findings in the record, do not demonstrate that Plaintiff had poor balance or any other impairment that would cause an antalgic gait such that a cane was necessary.  *See* R. 22.  Further, while Dr. Marrero documented her observation of Plaintiff's antalgic gait, her assessment of his functional abilities does not suggest that Plaintiff's gait resulted in an RFC for less than light work.

The ALJ also considered opinion evidence in determining Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) (explaining that in evaluating the intensity and persistence of a claimant's symptoms, the Commissioner considers all of the available evidence, including the "medical opinions of your treating source and other medical opinions"). Plaintiff does not challenge the ALJ's weighting of the opinion evidence. Of relevance to this specific claim, the ALJ afforded some weight to Dr. Burke's statement that Plaintiff did not require an assistive device, although Dr. Burke did not address specific abilities and limitations.  The ALJ observed that Dr. Burke's opinion was supported by other providers' findings showing that Plaintiff has full motor strength, no atrophy, no neurological deficits, and no restricted range of motion.  R. 23.

In sum, on this record, the Court concludes that the ALJ's determination that no exertional limitations should be assessed due to antalgic gait is supported by substantial evidence.

Plaintiff next argues that under the applicable pain standard he is disabled.  He notes that "[d]octors cut a hole in [Plaintiff's] head and then created a surgical drainage for his brain cyst," and then Plaintiff

subsequently developed headaches.  Plaintiff concludes that it "[s]eems

reasonable enough" that Plaintiff should be deemed disabled on the basis

of his complaints of headache pain.  ECF No. 21 at 34.

A claimant may establish his disability through his own testimony of

pain or other subjective symptoms.  *See Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11ᵗʰ Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th

Cir.1995).  The ALJ must consider a claimant's testimony of pain and other

subjective symptoms where the claimant meets the Eleventh Circuit's

three-part "pain standard."  *See Foote*, 67 F.3d at 1560.  Under that test,

evidence of an underlying medical condition must exist.  *Id.*  If that

threshold is met, then there must be either objective medical evidence that

confirms the severity of the alleged pain or symptoms arising from the

underlying medical condition, or evidence that the objectively-determined

medical condition is of such a severity that it can reasonably be expected

to give rise to the alleged pain or symptoms.  *Id.*  A claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is

sufficient to support a finding of disability.  *Id.* at 1561.

If the record shows that the claimant has a medically-determinable

impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.  *Id*. § 404.1529(c)(1)-(2).  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.  *Id.* § 404.1529(c)(3).  The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record.  *Id.* § 404.1529(c)(4).

  If the ALJ decides not to fully credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate

reasons for doing so or the record must be obvious as to the credibility

finding. *See Foote*, 67 F.3d at 1561–62.  While the ALJ does not have to

cite particular phrases or formulations, broad findings that a claimant was

incredible and could work are, alone, insufficient for the Court to conclude

that the ALJ considered the claimant's medical condition as a whole.  *Id*. at

1562.  The ALJ's articulated reasons must also be supported by

substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d

1529, 1532 (11th Cir.1991).  The Court will not disturb a properly

articulated credibility finding that is supported by substantial evidence.

*Foote*, 67 F.3d at 1562.

In this case, the ALJ applied the correct pain standard and found that

Plaintiff's medically determinable impairments could reasonably be

expected to cause some of the alleged symptoms, but his statements

concerning the intensity, persistence, and limiting effects of these

symptoms were not entirely credible.  R. 20-21.  As support for this

conclusion, the ALJ pointed to Plaintiff's neurosurgical treatment records

which reflect that his condition improved after the successful surgery.  In

particular, in November and December following the surgery, Plaintiff

denied having headaches and he was resuming normal activities.  At his

final visit with his neurosurgeon, Dr. Rosen observed the absence of the local mass effect in Plaintiff's brain that was causing his headaches prior to surgery, and recommended that Plaintiff see a primary care physician or neurologist for evaluation for headache disorder.  R. 412.

As the ALJ noted, Plaintiff thereafter received very little medical care for his headaches, and there are virtually no records from 2014 reflecting any treatment.  R. 21.  Plaintiff's records reflect that he was treated with medication for his headaches beginning in 2013, and at the time he was being treated, in July 2013, he reported to his provider that his headaches were fairly well controlled.  R. 486-87.  Moreover, there is no objective medical evidence in the record documenting the need for any work-related limitations due to headaches.

As further support for his credibility assessment, the ALJ pointed to Plaintiff's ADL's, as reported on his function report submitted with his claim.  Plaintiff reported that he can drive, shop, manage his finances, attend church, visit with family, watch television, and listen to music.  The ALJ concluded that "[t]he totality of these activities suggests that the claimant can perform light work."  The ALJ also observed that Plaintiff's

ability to drive undermines his allegations of dizziness, poor balance, and visual disturbance.  R. 22.

The record thus reflects that the ALJ correctly considered all of the record, including the objective medical evidence, Plaintiff's history, and statements of the Plaintiff and his doctors, in evaluating Plaintiff's subjective complaints.  *See* 20 C.F.R. § 404.1529(c)(1)-(2).  Based on this record, the Court concludes that the ALJ's credibility assessment is properly articulated and supported by substantial evidence, and the ALJ therefore did not err in finding that Plaintiff is not disabled.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** this 2nd  day of October 2017.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the**

<u>**court's internal use only, and does not control.**</u>  **A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**